UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

RAID THAHIR,

        Petitioner,

        v.                                                          Case No. 10-C-0142

UNITED STATES OF AMERICA,

        Respondent.

DECISION AND ORDER DENYING RAID THAHIR'S
MOTION PURSUANT TO 28 U.S.C. § 2255, DENYING CERTIFICATE OF
APPEALABILITY, AND DISMISSING CASE

Raid Thahir filed this motion pursuant to 28 U.S.C. § 2255, asserting that his conviction and sentence were imposed in violation of the Constitution. He and his brothers, Fuad Zaher and Murad Daher, were charged with one count of conspiracy to receive, possess, conceal, store, barter and/or sell stolen goods and two counts of using false documents. On February 20, 2007, Thahir entered a "blind plea" to the conspiracy count with the agreement that the remaining counts would be dismissed. The court sentenced him to 60 months, which was the statutory maximum but below the sentencing guidelines range of 78 to 97 months. The Seventh Circuit Court of Appeals affirmed his conviction. *United States v. Thahir*, 335 Fed. Appx. 648, 2009 WL 1916614 (7th Cir. 2009).

Thahir returned to this court on his § 2255 motion arguing ineffective assistance of counsel and seeking a downward departure. The court dismissed the request for downward departure inasmuch as it was addressed previously by this court and the Seventh Circuit, and it did not state a basis for relief under § 2255. (Doc. 8.) For the

reasons set forth below, Thahir has not satisfied his burden under § 2255 and the case will be dismissed.

Ineffective assistance of counsel claims "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003). When a § 2255 petition alleges ineffective assistance of counsel, the court evaluates the claim under the two-prong *Strickland* test. *McDowell v. Kingston*, 497 F.3d 757, 761 (7th Cir. 2007), *cert. denied*, 552 U.S. 1118, 128 S. Ct. 920, 169 L. Ed. 2d 762 (2008), citing *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Here, Thahir must prove (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that the attorney's deficient performance prejudiced the defendant such that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Morgan v. Hardy*, 662 F.3d 790, 802 (7th Cir. 2011), cert. denied, ––– U.S. ––––, 132 S. Ct. 1765, 182 L. Ed. 2d 533 (2012)(quoting *Strickland*, 466 U.S. at 694). If the Court finds either the performance or the prejudice component of the ineffective assistance claim deficient under the *Strickland* test, there is no need to consider the sufficiency of the other component. *United States v. Slaughter*, 900 F.2d 1119, 1124 (7th Cir.1990).

Thahir bears a "heavy burden" overcoming the presumption that his counsel rendered reasonably effective assistance and that he was prejudiced by the deficient performance. *See Walker v. Litscher*, 421 F.3d 549, 558 (7th Cir. 2005), *cert. denied*, 546 U.S. 1121, 126 S. Ct. 1095, 163 L. Ed. 2d 909 (2006)(citing *Strickland*, 466 U.S. at 687–88). The court's review is "highly deferential" to the attorney, "with the underlying

assumption that 'counsel's conduct falls within the wide range of reasonable professional assistance.'" *United States v. Holman*, 314 F.3d 837, 840 (7th Cir. 2002)(quoting *Strickland*, 466 U.S. at 689). Hence, there is a strong presumption that Thahir's counsel performed reasonably. *See Strickland*, 466 U.S. at 690. Consequently, to succeed in his claim, Thahir must show "errors so serious that counsel was not functioning as the 'counsel' guaranteed [to him] by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

Thahir argues that his trial attorney was ineffective in (1) allowing the government to withdraw an earlier version of a plea agreement and rushing him to enter a blind plea, (2) failing to competently argue that he was entitled to the reduction of his offense level for acceptance of responsibility under U.S.S.G. § 3E1.1, (3) failing to competently argue that the loss amount was lower than the court determined and between $200,000 and $400,000, (4) failing to assert the government's noncompliance with Article 36 of the Vienna Convention, (5) failing to competently argue that he was entitled to a downward departure based on his deportability, (6) failing to request that the district court recommend that he participate in the Bureau of Prisons' 500 Hour Drug Treatment Program, and (7) failing to argue that his sentence represented an unwarranted disparate sentence.

With respect to the first argument, Thahir accuses counsel of "allowing the government to withdraw" the global plea and forcing him to enter an individual blind plea. Thahir maintains that he should have received a thirty-month sentence consistent with the terms of the government's original plea offer that was contingent on all three of the brothers pleading guilty. However, the government withdrew the offer after Thahir's brother refused to plead guilty. Thahir believes that counsel's performance fell below the objective standard of reasonableness because he failed "to make any practical and enough efforts"

to save the withdrawn plea agreement by delaying the government until [brother] Fuad could be persuaded to plead guilty." In addition, Thahir argues:

> petitioner's counsel failed to make enough communications and contacts with Fuad and his attorney over the seriousness of the situation; failed to address the seriousness of the situation in writing with Fuad and his attorney; failed to request codefendants meeting in order to discuss the seriousness of the situation that petitioner was facing, all in order to save the plea agreement from being withdrawn; an affidavit from Fuad attached to petitioner's § 2255 motion (Exhibit -4) and in which he indicated that had petitioner's counsel contacted or communicated to him in any way that because of his action, petitioner would be facing 60 months sentence, he would have agreed to enter a plea of guilty in order to save the plea agreement; counsel was ineffective for his failure to secure a new plea agreement, instead of rushing petitioner to court to enter a blind plea; finally, absent the ineffectiveness of counsel, petitioner would have received a 30 months sentence, which is the proper remedy that this court should now provide, or in the alternative, petitioner's offense level be reduced by two levels.

(Doc. 14 at 4-5.) Fuad Zaher filed an affidavit in support of Thahir's motion indicating that Attorney Steinle never contacted him to inform him that Thahir would be sentenced without the benefit of the plea agreement and may face the statutory maximum. (Doc. 3 at Ex. 4).

The record belies these arguments. During the February 20, 2007, plea hearing and with Thahir present, Attorney Steinle represented to this court that the government was on the eighth draft of the plea agreement. *United States v. Thahir*, Case No. 05-Cr-283, doc. 107 at 3 (E.D. Wis. 2007).[1] He stated that Thahir was very familiar with all of the issues having gone through all of the drafts. Notably, Thahir was given ample opportunities to speak and never stated on the record that Attorney Steinle was incorrect on this point.

---

[1] Because the court will cite to various documents from criminal case no. 05-CR-283, all citations to that criminal record will begin with *Thahir* followed by the docket and page number for the reference document. References to the Seventh Circuit decision will be followed by the citation to the Federal Appendix.

-4-

Attorney Steinle represented that Thahir wanted to move forward to obtain the benefit of his acceptance of responsibility even though the global plea had fallen apart after Fuad refused. *Id*. at 4. The assistant United States attorney acknowledged that the prior plea agreement was contingent upon the three brothers entering guilty pleas but agreed to dismiss counts two and three if Thahir were to enter blind plea. *Id.* at 10-11.

After hearing the statements of counsel, Thahir was asked by this court whether he wished to plead guilty. *Id.* at 11. In unequivocal terms, Thahir was told that the government's only agreement was that it would dismiss two counts against him and make a fair recommendation at sentencing. *Id.*

The court adjourned to allow Thahir time to speak with his attorney and to determine whether he wanted to enter a blind plea. *Id.* at 15. In addition, the court thoroughly explained that the loss issue is a determination that will be made by the court. *Id.* at 14-15.

When the parties returned to the plea hearing, Attorney Steinle "corrected" two statements by Thahir. *Id.* First, he clarified that Thahir had learned the week before that his brother's plea fell apart and that there would be no global plea. *Id.* at 15-16. Moreover, Attorney Steinle denied vehemently Thahir's accusations that he was ineffective and working for the government, clarifying that he had never spent so much time on a plea - going back and forth with eight drafts. *Id.* at 16. Attorney Steinle explained that he was prepared to go to trial and would not force Thahir into a plea, but that the only difference between the global resolution and the blind plea was the absence of a stipulation on the loss amount. *Id.* At 16-17. The assistant United States attorney agreed indicating that he

-5-

Case 2:10-cv-00142-CNC    Filed 03/14/13    Page 5 of 14    Document 15

had never had so many proposed plea agreements with other defendants and explained that the loss amount could exceed $400,000. *Id.* at 17, 21.

Thahir discussed the possibility of a plea with the court and his counsel for two hours prior to entering the plea of guilty. In addition, the court underscored that Attorney Steinle could not guarantee what the court will decide and that the decision whether to plead rested with Thahir – no one else could make that decision for him. Thahir stated on the record that it was his decision to plead guilty to one count. *Id.* at 44. Thus, from the plea hearing colloquy, it is apparent that Thahir was not rushed into a guilty plea.

Further, Attorney Steinle cannot be held responsible for the government's decision to withdraw a plea offer. Attorney Steinle's responsibility was to his client, Thahir – he was not responsible and could not ethically counsel Fuad Zaher or force him into a guilty plea. This is particularly true where Thahir insisted that his brother, Fuad Zaher, was innocent.

During his plea hearing, Thahir said "But why should I convince my brother, why should I ask him to plead guilty when he's not guilty. Why should I do that?" *Id.* at 23. He also stated that the assistant United States attorney was trying to get him to convince his brother to plead guilty when his brothers "never even sit down and never even talk to this man" who was selling the product illegally. *Id.* at 28. Later in the hearing and under oath, Thahir stated that he was "very, very, very sure that my brother, Fuad, was not involved in this." *Id.* at 85. Significantly, Fuad Zaher did not plead guilty for an additional nine months – on the day that he was scheduled to go to trial – and only then after working with three attorneys, filing pretrial motions, and participating in an evidentiary hearing. *Thahir*, docs. 87-88, 99-100, 102-106, 115-118.

-6-

Also, during the plea hearing, Thahir admitted that no one forced him to plead. *Thahir,* doc. 107 at 78. Notably, Attorney Steinle appeared frustrated during the sentencing with the inability to reach a global plea. Attorney Steinle argued that there was one attorney who absolutely refused to participate in the joint negotiations. *Thahir*, doc. 168 at 44. Indeed, Attorney Steinle even submitted that his client faces the denial of acceptance of responsibility because someone else did not do their job. *Id.* at 45.

> It's the first time in 23 years of practicing law, Judge, that I came into a Court and entered a plea without a Plea Agreement in this District. I had to do it. And the only reason why is because my client says I'm guilty. And I don't want to go to trial with regard to it. And I did a blind plea. And here I am sitting arguing all the stuff that – most of the stuff could have or should have been stipulated. And he's getting – honestly, he's losing on the loss, because the Government had agreed to a different loss with regard to it. He's losing on supervisory role. He's losing on acceptance. He's losing on obstructing. He's losing on everything because he didn't have a plea agreement in this case. And it's because of one – one person.

*Id.* at 46.

When Thahir made the decision to plead guilty, the court made an explicit finding based on Thahir's testimony that no one used threats, force or intimidation to coerce the plea, and that Thahir made the decision to plead guilty voluntarily. *Thahir*, doc. 107 at 110-111. The United States agreed to dismiss two felony counts and not seek obstruction of justice points that would have applied at sentencing. This reduced the statutory maximum from 15 years to 5 years, and reduced the guidelines range from 78-97 months to 63-78 months. On these facts, Thahir cannot show that his attorney's performance fell outside the wide range of competent representation or that there was a reasonable probability that the result of the proceedings would have been different.

Next, Thahir asserts that counsel failed to "competently" argue for a reduction in offense level. He does not suggest that counsel failed to make the argument. On the other hand, the record reveals that Attorney Steinle argued for a sentencing guidelines reduction based on acceptance of responsibility before and during the sentencing. In his written objections to the presentence report, Attorney Steinle maintained that Thahir did not obstruct justice and that he deserved a three-level reduction under the sentencing guidelines for acceptance of responsibility based on his willingness to plead guilty without the benefit of the plea agreement, his assistance in getting Murad to plead guilty, Thahir's efforts to do "everything in his power" to resolve this case, and his debriefs with the government. *Thahir*, doc. 85 at p. 5. In addition, at the January 18, 2008, sentencing hearing, Attorney Steinle argued that Thahir accepted responsibility from the beginning and knew what he did was wrong. He underscored Thahir's willingness to debrief with the government on four occasions. *Thahir*, doc. 168 at 42.

This court agreed with Attorney Steinle and declined to impose additional points for obstruction of justice. However, simply because one does not obstruct justice does not mean that there is acceptance of responsibility. Rather, the converse is true: a finding of obstruction of justice generally suggests that the defendant has not accepted responsibility for his crime. *United States v. Gonzales*, 608 F.3d 1001, 1007–08 (7th Cir. 2010). Hence, this court finds that trial counsel was not ineffective in failing to make an argument that was not supported by law.

This court declined to award acceptance of responsibility points because it believed that Thahir lied about the extent of his brother, Fuad Zaher's, involvement in the conspiracy. Thahir's statements with respect to Fuad Zaher were found by this court to be

knowingly untruthful and Fuad Zaher later admitted his role in submitting false invoices to WIC investigators. In addition, the court found that Thahir tried to influence Ralph Barton not to cooperate with the government and told Barton that coopering would not be in Barton's "best interest." On appeal, the Seventh Circuit found no error in this analysis and rejected Thahir's argument that he was "merely expressing his opinion on the matter." *Thahir*, 335 Fed. Appx. at 653. Thahir focuses on his reasons for leaving the country after a search warrant was executed, but this court did not focus on his flight. Quite simply, the reasons cited by this court were sufficient and Thahir has failed to identify any other argument that would have persuaded this court that he was eligible for a sentencing guidelines reduction for acceptance of responsibility. Hence, Thahir has not satisfied his burden under *Strickland*.

Similarly, the court rejects Thahir's argument that counsel failed "to argue competently that the loss amount was between $200,000 & 400,000." There is no dispute that Thahir knew that the loss amount would be a contested issue going into the blind plea agreement. Attorney Steinle argued that the loss amount was consistent with the terms of the original plea offer and fell between $200,000-$400,000. Further, during the plea hearing, Thahir argued that the loss amount was less than $150,000. *Thahir*, doc. 107 at 105.

The presentence report recommended a loss amount of $486,558.76 based on approximately $440,000 in redemptions of WIC vouchers for stolen infant formula at two convenience stores operated by Thahir and an additional $46,168 worth of stolen formula recovered during the search of one of the properties. Attorney Steinle filed written objections to the presentence report based on the loss amount. He emphasized that the

-9-

government conceded "in their version of the offense that the more accurate number is between $200,000 and $400,000 as they cannot prove that Saleh Wholesale receipts are illegitimate and therefore gives the benefit of the doubt to the Defendant with a total loss of $383,348.20." *Thahir*, doc. 85 at 1. Attorney Steinle further argued in his motion for downward departure that the actual loss amount to the consumer was zero and there was no loss to the WIC Program or the participants of the program. *Thahir*, doc. 84 at 7. At sentencing, Attorney Steinle submitted that there was no evidence to support a finding that the Saleh invoices do not reflect legitimate sales and that the government could not meet its burden of proof. *Thahir*, doc. 168 at 4-6, 12-13.

Thahir's arguments in his submissions supporting the § 2255 motion fail to persuade this court that Attorney Steinle's performance was objectively deficient. At best, Thahir appears to contend that some of the Saleh invoices were paid by legitimate checks and the sum of these checks was $55,593. Yet deducting those checks from the figure of $486,558.76 set forth in the presentence report leaves a loss amount exceeding $400,000.

Ultimately, this court found and the Seventh Circuit agreed that the loss amount exceeded $400,000. *Thahir*, 335 Fed. Appx. at 654. Indeed, the Seventh Circuit held

> After reviewing the record, we conclude that the district court was justified in finding that the Saleh Wholesale receipts were fraudulent and could be added to the total amount of loss. Saleh Wholesale was owned by Subhi Ahmed, who had a history of dealing in stolen goods and was deported a few years ago. Ahmed also owned Hallah Wholesale, which was located next door to Saleh Wholesale. It is undisputed that Thahir's stores had several blank and false invoices from Hallah Wholesale. Further, given the transportation costs of liquid formula, it appears unlikely that Thahir would have purchased legitimate formula from a Philadelphia wholesaler rather than one closer to Wisconsin. Based on this evidence, especially Saleh Wholesale's connection to Hallah Wholesale and the incriminating Hallah Wholesale evidence found in Thahir's stores, it was not clear error for the

-10-

district court to conclude that the receipts from Saleh wholesale were fraudulent.

*Thahir*, 335 F.3d. Appx. at 655. Reviewing the record, it was established that Hallah Wholesale and Saleh Wholesale were located next door to each other at 1848 and 1850 Benson Street in Philadelphia, Pennsylvania, Hallah and Saleh were owned by Subhi Ahmed, Saleh Wholesale was known to have dealt in stolen goods, and that Hallah provided blank invoices to cover the stolen formula. For the reasons cited and in the absence of any additional argument by Thahir, the court finds that Thahir has not established that trial counsel was ineffective in arguing the loss amount.

Thahir next contends that counsel was ineffective for failing to notify him of his right to consular notification and assistance. Article 36 of the Vienna Convention provides that when authorities arrest a foreign national he has the right to contact his consulate and that the government must inform the arrestee of that right. *Sandoval v. United States,* 574 F.3d 847, 850 (7th Cir. 2009). Specifically, Article 36 imposes three obligations on the arresting authority. *Id.* The law enforcement agency must: "(1) inform the consulate of a foreign national's arrest or detention without delay; (2) forward communications from a detained national to the consulate without delay; and (3) inform a detained foreign national of his rights under Article 36 without delay." *Id.* In addition to providing a "cultural bridge" between the foreign detainee and the American legal system, the consulate may also "conduct its own investigations, file amicus briefs and even intervene directly in a proceeding if it deems that necessary." *Id.*

Thahir's argument is flawed in several respects. First, the government concedes that it failed to notify Thahir of his right to contact the consulate and does not know whether

-11-

Thahir's counsel advised him of this right. However, there is no prejudice from counsel's failure to provide the notice because this court notified Thahir of his right to consult with the consulate from his country. *Thahir*, doc. 107 at 42. As the court explained prior to Thahir's decision to proceed with a blind plea, "people will be able to talk with the consulate regarding issues that they believe they need to address. Some of these issues include whether or not their country or families can provide any additional legal assistance or the opportunity to communicate with family about the case." *Id.* This discussion occurred on the record over eleven months *prior* to sentencing. Second, to demonstrate prejudice for an Article 36 violation, a foreign national must "show a realistic prospect of consular assistance and provide some credible indication of facts reasonably available to him to support his claim." *Sandoval*, 574 F.3d at 850. Thahir's assertions that he would have received assistance from the PLO Mission and the Jordanian Consulate that would have lowered his sentence significantly are based on little more than speculation. Accordingly, Thahir has not established prejudice under the second prong of *Strickland.*

To the extent that Thahir argues that Attorney Steinle failed to effectively argue for a downward departure based on his status as a deportable alien, he ignores the record which discloses that Attorney Steinle argued for such a departure in a written motion filed June 1, 2007, and at sentencing. *Thahir*, doc. 84 at 1, 7, 12. That the district court disagreed with Attorney Steinle does not render him ineffective. Moreover, the Seventh Circuit affirmed the district court noting that Thahir would likely face deportation whether he was sentenced to sixty months or a lesser sentence. *Thahir*, 335 Fed. Appx. at 655.

The next argument is puzzling inasmuch as Attorney Steinle persuaded this court to recommend that Thahir be admitted to the Bureau of Prison's 500-hour drug treatment

-12-

program. On January 23, 2008, the court sentenced Thahir to 60 months imprisonment and three years supervised release. Five days later, Attorney Steinle moved to correct Thahir's sentence and asked that the court modify the judgment to recommend that Thahir participate in the Bureau of Prison's 500-hour drug treatment program. *Thahir*, doc. 138. During the motion hearing, Attorney Steinle argued that BVI and the US Department of Agriculture found cocaine and marijuana and Thahir signed a statement that he uses cocaine. *Thahir*, doc. 170 at 3. The court directly questioned Thahir whether he needed the program, and Thahir responded affirmatively, noting that he also relied on Vicodin. *Id.* at 10. As a consequence, the court agreed to recommend that Thahir be considered for admission to the drug treatment program noting Thahir's association with drug users who brought the milk products into his stores for exchange. *Id.* at 11. Attorney Steinle's arguments persuaded this court to make the recommendation. However, the Bureau of Prisons' decision not to follow the recommendation is not the fault of Attorney Steinle.

Thahir's final argument is that counsel was ineffective in failing to argue that his sentence constituted an unwarranted sentencing disparity. However, counsel's failure to raise the argument was prudent in that Thahir's sentence fell below the guidelines range. As the Seventh Circuit held in *United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006), "[s]entencing disparities are at their ebb when the Guidelines are followed, for the ranges are themselves designed to treat similar offenders similarly .... A sentence within a properly ascertained range therefore cannot be treated as unreasonable by reference to § 3553(a)(6)." Again, Attorney Steinle's performance was not deficient.

On this record, the court declines to issue a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings. A certificate of appealability

-13-

may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing standard is met when reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n. 4 (1983). Thahir may disagree with the outcome of this case but reasonable jurists would not debate that counsel effectively – and zealously – represented his client. Consequently, the court will not issue a certificate of appealability respecting this proceeding. Now, therefore,

    IT IS ORDERED that Raid Thahir's § 2255 motion is denied.

    IT IS FURTHER ORDERED that a certificate of appealability is denied.

    IT IS FURTHER ORDERED that this case be dismissed.

    Dated at Milwaukee, Wisconsin, this 14th day of March, 2013.

                                      BY THE COURT

                                      /s/ C.N. Clevert, Jr.
                                      C.N. CLEVERT, JR.
                                      U.S. DISTRICT JUDGE